**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| ABET LIFE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. 4:20-cv-1169 |
| ALEX M. AZAR II, Secretary, | § | |
| UNITED STATES | § | |
| DEPARTMENT OF HEALTH | § | |
| AND HUMAN SERVICES, | § | |
| Defendant. | § | |

**VERIFIED COMPLAINT FOR INJUNCTIVE**
**AND DECLARATORY RELIEF AND ATTORNEY'S FEES**

COMES NOW, Abet Life, Inc. (the "Plaintiff" or "Abet Life") and files this its Verified

Complaint for Injunctive and Declaratory Relief and Attorney's Fees against Alex M. Azar II,

Secretary of the United States Department of Health and Human Services (the "Defendant"), and

alleges and avers as follows:

**INTRODUCTION**

1.      Abet Life is a Medicare home care provider that delivers home health services to

patients in their homes in the greater-Houston area.  Such care is critical, especially to elderly

patients, that require assistance or have conditions that make leaving their homes a considerable

and taxing effort. Home health services are covered by Medicare only if furnished by a home

health agency participating in the Medicare program and acting on a physician's certification that

the patient is confined to home, needs intermittent skilled nursing care or physical or

occupational therapy or speech-language pathology services, and is under the care of a physician

who has established a plan of care.  In effect, physicians determine whether a patient is eligible

for home health services, and the home care provider furnishes services in accordance with their plans of care.

2.       On March 17, 2020, Defendant noticed the imposition of a Medicare payment suspension of Plaintiff's Medicare payments.  The suspension was brought under 42 C.F.R. §405.371(a)(2) based upon a "credible allegation of fraud."  However, the list of sample claims indicates that the basis for the payment suspension is that "Documentation does not support the services billed met criteria for skilled nursing services."  The garbled recitation indicates inadequate documentation as the reason for the action.  As a result of the suspension action, *all* Medicare payments owed to the provider are being withheld pending resolution of the ongoing investigation.

3.       Unfortunately, the suspension action could not have come at a worse time. President Donald Trump declared a national emergency over the COVID-19 outbreak on March 13, 2020.  Dr. Deborah Birx, White House Coronavirus Response Coordinator, has reported that U.S. deaths cause by COVID-19 may be catastrophic.  She said that Dr. Anthony Fauci, National Institute of Allergies and Infectious Diseases, has predicted U.S. deaths could range from 1.6 to 2.2 million in a worst case scenario and projects 100,000 to 200,000 in a best case scenario.  The surge in confirmed coronavirus cases is overwhelming our nation's hospitals.  And it is having a cascading effect on ancillary providers and practitioners as well. [1]  In fact, CMS recently issued Guidance for Infection Control and Prevention Concerning Coronavirus Disease 2019 (COVID-19) in Home Health Agencies (HHAs).  Suffice it to say, Medicare home care providers will face

---

[1] The Trump Administration has recently announced a wide array of temporary regulatory waivers and new rules to equip the American health care system, including home care providers, with maximum flexibility to respond to the COVID-19 pandemic.

tremendous challenges as they attempt to treat an ever-growing patient base and at the same time
screen patients at risk for having COVID-19 infection.

4.      Impact of the Medicare payment suspension threatens to force Plaintiff's closure
and filing of bankruptcy.  The provider derives approximately 90% of its revenues from treating
sick and elderly Medicare patients.  Obviously, if the provider is not paid for these home health
services, it cannot pay its employees, the care givers to these very needy patients.

5.      If Plaintiff is forced to close, Plaintiff's patients will have to obtain their home
health services elsewhere.  Due to the COVID-19 outbreak securing such services is an
uncertainty.  In fact, home care agencies in Texas are now in crisis due to the pandemic.
Recently, National Association for Home Care & Hospice President William Dombi commented
that "This is one of those times when the home health agencies have to figure out where the
balance is to be struck between the safety of their staff and caring for the patients that they
have." [2]  With the prospect of burgeoning coronavirus visits combined with the agency's
achieving this perfect balance, it will undoubtedly result in a scramble to obtain home care
services because of COVID-19.

6.      Had Defendant acted properly, it would not have imposed the suspension.
Federal regulations provide that CMS may find good cause exists *not* to suspend a provider's
Medicare payments where it is determined that beneficiary access to items or services would be
so jeopardized by a payment suspension in whole or in part as to cause a danger to life or health.
42 C.F.R. §405.371(b)(1)(ii).  It is a clear abuse of discretion for CMS to not find that good
cause exists here when the COVID-19 pandemic and the surge of confirmed coronavirus cases

---

[2]https://homehealthcarenews.com/2020/03/nahcs-dombi-agencies-arent-panicking-in-the-streets-over-pdgm/

will soon overwhelm America's healthcare system, including home health agencies. [3]  Not only

will Plaintiff be forced to shut down, the government's suspension action places an even greater

burden on a healthcare community that soon may be on the brink of collapse. [4]

7.      Notwithstanding the abuse of discretion, Abet Life has a constitutional property

interest in payments for services rendered and now *indefinitely* suspended during the

investigation into the adequacy of its documentation.  Defendant violates Due Process of law by

imposing the adverse action during the COVID-19 pandemic and national emergency when it

fails to give notice and an opportunity for a hearing to contest the Medicare payment suspension.

Indeed, the provider has no administrative appeal rights to contest the suspension.  Clearly, there

is a high risk that Plaintiff will be erroneously deprived of its property interest in earned

Medicare payments withheld by suspension, pursuant to 42 C.F.R. §405.371(a)(2), because the

provider is not entitled to an administrative appeal to dispute and contest the adverse action,

HHS has abused its discretion and not found good cause to not impose the adverse action, and

there is absolutely no established time frame for resolving the investigation of its documentation.

8.      Moreover, patients at Abet Life have a constitutional Due Process right

(consistent with principles of equal protection) to access safe and reliable services under a

federal Medicare program.  HHS violates the patients' right to access such healthcare by

---

[3] Aside from the jeopardy to patients, the impact of the suspension is at odds with the coronavirus stimulus package. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was enacted, an economic relief package in response to the COVID-19 pandemic. The CARES Act provides economic support at the federal level to the business sector, employees, individuals and families, and specific industries that have been impacted, including air transportation, healthcare, and education.  Key provisions providing for loan forgiveness require that workers need to remain employed.

[4] HHS's Office of Inspector General issued a message on minimizing burdens to provider on March 30, 2020. It stated that the OIG places a high priority on providing the health care community with the flexibility to provide needed care during this emergency. The delivery of patient care during this public health emergency must be the primary focus of the health care industry. For any conduct during this emergency that may be subject to OIG administrative enforcement, OIG will carefully consider the context and intent of the parties when assessing whether to proceed with any enforcement action.  In view of the consequences, a review that is primarily focused on documentation that allegedly failed to support the complexity of claimed services does not warrant suspension of Medicare payments during the COVID-19 pandemic and national emergency.

imposing the suspension during the COVID-19 pandemic and national emergency.  Due to the

COVID-19 outbreak securing such essential healthcare services is an uncertainty.  In fact, during

the crisis, these patients may only be able to access essential healthcare through Plaintiff's home

health agency.  Clearly, good cause exists for Defendant not to suspend the provider's Medicare

payments where, as here, the beneficiary's access to items or services are jeopardized and the

risk of patient abandonment causes a danger to life or health.  *See* 42 C.F.R. §405.371(b)(1)(ii).

9.      Plaintiff is entitled to injunctive relief that requires Defendant to temporarily

rescind the Medicare payment suspension during the COVID-19 pandemic and national

emergency, and release all suspended payments, until the national emergency is lifted or

Defendant otherwise gives notice and an opportunity for a hearing on the adverse action in

conformance with Due Process of Law.  Clearly, the government's ill-advised Medicare payment

suspension during the COVID-19 pandemic and national emergency will irreparably harm

Plaintiff by destroying its business and forcing its closure, and it jeopardizes the health and

safety of the provider's patients and violates their Due Process right (consistent with principles

of equal protection) to access essential healthcare services.  Moreover, the government's action

will place an even greater burden on area providers and practitioners.  Defendant's egregious

*ultra vires* conduct can only be remedied by an order for injunctive relief otherwise unavailable

through the administrative process. Accordingly, Plaintiff is entitled to injunctive relief that

requires Defendant to temporarily rescind the Medicare payment suspension during the COVID-

19 pandemic and national emergency, as well as release all suspended payments, until the

emergency ends or Defendant can otherwise give notice and a hearing in conformance with Due

Process of law. [5]

---

[5] Recently, in *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018), the Fifth Circuit held the trial court
had jurisdiction under the collateral-claim exception to the administrative exhaustion requirement over a provider's

## PARTIES

10.     Abet Life, Inc., is a Texas corporation that has its principle place of business in Fort Bend County, Texas, and it provides home health services in the greater-Houston area.

11.     Defendant, Alex M. Azar II, in his official capacity, is the Secretary of the United States Department of Health and Human Services ("HHS"), the governmental department which contains the Centers for Medicare and Medicaid Services ("CMS"), the agency within HHS that is responsible for administration of the Medicare and Medicaid programs. He may be served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure by serving the U.S. Attorney for the district where the action is brought, serving the Attorney General of the United States in Washington, D.C., by certified mail, and by serving the United States Department of Health and Human Services, by certified mail.

## JURISDICTION

12.     The Court has jurisdiction pursuant to 28 U.S.C. §1331 under the entirely collateral Constitutional claim exception to the Medicare exhaustion requirement established by *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Defendant's imposition of the Medicare payment suspension during the COVID-19 pandemic and national emergency without giving notice and an opportunity for a hearing to contest the adverse action violates Due Process of Law. There is a high risk that Plaintiff will be erroneously deprived of its property interest in Medicare payments it has earned for services rendered and withheld indefinitely by the suspension, pursuant to 42 C.F.R. §405.371(a)(2), because the provider is not entitled to notice and opportunity for a hearing to dispute and contest the suspension, and there is absolutely no established time frame for resolving the investigation.   Thus, Plaintiff is deprived of an administrative appeal and that

---

due process and *ultra vires* claims. The provider brought an action to prevent recoupment until a hearing could be provided in accordance with 42 U.S.C. §1395ff(d) and in conformance with Due Process of law.

effectively prevents the provider from exhausting administrative remedies to challenge the payment suspension.   No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions.  Such failure violates Plaintiff's constitutional right of Due Process guaranteed by U.S. CONST. amend. V, §1.  Moreover, the Medicare payment suspension and the request to temporarily rescind the action is not a benefits determination, but an otherwise unreviewable procedural issue. Jurisdiction is based upon Plaintiff's constitutional claim that is collateral to a substantive claim for benefits.   Likewise, Defendant violates Plaintiff's patients' right to access such healthcare by imposing the suspension during the COVID-19 pandemic and national emergency.

13.     Additionally, the Court has jurisdiction over the lawsuit pursuant to 42 U.S.C. §§405(g), 1395ii and 1395ff(b), and on the authority of *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). Defendant's failure to extend to Plaintiff an administrative appeal to contest the Medicare payment suspension violates Due Process of law.   Thus, Plaintiff is deprived of an administrative appeal and that effectively prevents the provider from exhausting administrative remedies to challenge the payment suspension.  No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions.  Section 405 of the statute "would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 17. Therefore, the exhaustion requirement is excepted under *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). This exception was explicitly reaffirmed by *Illinois Council*, 529 U.S. at 19-23. The amount in controversy exceeds the $1,000 jurisdictional limit.

## VENUE

14.     Venue is proper in this Court under 42 U.S.C. §§505(g), 1395ii and 1395ff(b),

and 28 U.S.C. §§1391(b) and (e), and 5 U.S.C. §703.

## APPLICABLE MEDICARE LAWS

### The Medicare Program

15.     As part of the Social Security Amendments of 1965, Congress established the

Medicare program: a national health insurance plan to cover the cost of medical care for the

elderly and disabled. *See* 42 U.S.C. §1395 *et seq*.  Officially known as "Health Insurance Benefits

for the Aged and Disabled," it provides basic protection against the costs of inpatient hospital

and other institutional provider care. It also covers the costs of physician and other healthcare

practitioner services and items not covered under the basic program. In 1997, beneficiaries were

extended the option of choosing a managed care plan. More recently, in 2006, the program was

expanded further to include a prescription drug benefit.

### Home Health Services

16.     Medicare covers home health services furnished to beneficiaries by home health

agencies participating in the program. *See* 42 U.S.C. §1395x(m); 42 C.F.R. §409.40 *et seq*. A

provider must act on a physician's certification that the individual is confined to the home, needs

skilled nursing care on an intermittent basis or is in need of physical or occupational therapy, or

speech-language pathology service, and is under the care of a physician who has established a

plan of care. 42 C.F.R. §409.42. If the patient does not need therapy, skilled nursing care must be

needed at least once every 60 days. *Id*.

### Payment and Audit Functions

17.     Medicare's payment and audit functions are performed by various federal

contractors. For instance, the payment of home health claims at issue in this case was made by

Palmetto GBA, LLC. Various other contractors, like Qlarant, a Unified Program Integrity Contractor ("UPIC"), investigate instances of suspected fraud, waste, and abuse as well as identify any improper payments that are to be collected by Administrative Contractors.

<strong>Appeal Process</strong>

18.     Home health agencies participating in the Medicare program are entitled to appeal the initial determination. *See* 42 U.S.C. §1395ff. Federal regulations establish an elaborate administrative appeal process to review the adverse action. *See* 42 C.F.R. Subpart I – Determination, Redeterminations, and Appeals Under Original Medicare. A provider dissatisfied with an initial determination may request a Redetermination by a contractor in accordance with 42 C.F.R. §§405.940-405.958. The Redetermination must be issued within sixty (60) calendar days. If a provider is dissatisfied with a Redetermination decision, it may request a Reconsideration by a Qualified Independent Contractor ("QIC") in accordance with 42 C.F.R. §§405.960-405.986. The Reconsideration must be issued within sixty (60) calendar days. In the event the provider is dissatisfied with the Reconsideration decision, it may request an ALJ hearing in accordance with 42 C.F.R. §§405.1000-405.1054. The ALJ must issue a decision within ninety (90) calendar days. The provider may request review of the ALJ's decision by the Medicare Appeals Council in accordance with 42 C.F.R. §§405.1100-405.1140. The Council must issue a decision within ninety (90) calendar days. The Council's decision is the final agency action, and it is subject to judicial review. *See* 42 U.S.C. §1395ff; 42 C.F.R. §§405.1130, 405.1132, 405.1134; *see also* 42 U.S.C. §405(g).

<strong>Suspension of Medicare Payments</strong>

19.     Medicare payments to providers may be suspended, in whole or in part, by CMS or its contractors, if there is "reliable information that an overpayment exists." 42 C.F.R.

9

§405.371(a)(1).

20.     In cases of suspected fraud, CMS or its contractors may suspend Medicare payments where there is a "credible allegation of fraud" against the provider, unless there is good cause not to suspend payments. 42 C.F.R. §405.371(a)(2).

21.     CMS may find that good cause exists not to suspend a provider's payments where, among other things, it is determined that beneficiary access to services would be so "jeopardized by a payment suspension" as to cause a "danger to life or health." 42 C.F.R. §405.371(b)(ii).

22.     Every 180 days after the initiation of a suspension of payments based on a credible allegation of fraud, CMS will evaluate whether there is good cause to extend the suspension. 42 C.F.R. §405.371(b)(2). Good cause to not continue a suspension is deemed to exist if it has been in effect for 18 months and there has not been a resolution of the investigation. 42 C.F.R. §405.371(b)(3). However, the suspension can be continued indefinitely if the case has been referred to OIG for enforcement action or DOJ requests that it be continued based on the ongoing investigation and anticipated filing of criminal or civil action or both. 42 C.F.R. §§405.371(b)(3)(i), (ii).

**Rebuttal Statement**

23.     A provider whose payments are suspended without notice, as in this case, is given by the Medicare contractor an opportunity to submit a rebuttal statement as to why the suspensions should be removed. 42 C.F.R. §405.372(b)(2). *See also* 42 C.F.R. §405.374. When a rebuttal statement is submitted, CMS, or its contractor, must within 15 days from the date of its

10

receipt must issue written notice the determination.  The rebuttal determination is not an appealable decision.  42 C.F.R. §§405.375(a)-(c). [6]

## CONDITIONS PRECEDENT

24.      All conditions precedent have been performed or have occurred.

## FACTS

### Medicare Home Care Provider

25.      Abet Life, Inc., is a home health agency located in Missouri City, Texas, participating in the Medicare program.

26.      Plaintiff has been in operation in the Houston-area for over seven years.  It employs some 30 bilingual care givers and has a diverse census of approximately 35 patients.  The provider derives approximately 90% of its revenue from Medicare payments, and it has an estimated value of approximately $2.1 million.

27.      Many of Plaintiff's home health patients have recently experienced hospitalization or frequent emergent care treatment before admission to home health. These are patients suffering from serious and chronic conditions such as heart disease, lung disease (COPD), hypertension, diabetes, cancer, neurological diseases (strokes) and other serious illnesses complicated by the presence of other co-morbidities that require monitoring by skilled professionals. Interventions performed by the home health team often include procedures that were previously performed only in institutional care settings, but now are provided to the patient within the home setting.  Examples of these are complex wound care treatments, medications administered through IV therapy and other invasive procedures.

---

[6] The suspension is not considered an "initial determination" and no appeal rights, including right to ALJ hearing, are extended to a provider to contest the adverse action.

**Qlarant On-site Records Request**

28.     On October 7, 2019, Qlarant, a UPIC, issued its letter informing Plaintiff it would

be conducting a review of selected claims it had submitted to Medicare and/or Medicaid. The letter

explained that the records it was requesting include any and all documentation to support the

medical necessity of services billed for the specified dates of service on an attached list plus the

proceeding 60 days.  Essentially, the request asked Plaintiff to produce *all* records that related to

and supported the subject Medicare claims, including records maintained by the patient's physician

or hospital documentation (during the qualifying period).  Indeed, documents that a home health

agency is not required or otherwise does not possess in the ordinary course of business.

29.     On or about November 1, 2019, Plaintiff produced all pertinent records available

to the provider that were responsive to Qlarant's records request.

**Medicare Payment Suspension**

30.     On March 17, 2020, Qlarant issued to Plaintiff a notice of suspension of Medicare

payments.  The suspension took effect on March 12, 2020 because CMS had asserted that prior

notice would have placed additional Medicare funds at risk.  The suspension action was brought

under 42 C.F.R. §405.371(a)(2) and alleges a "credible allegation of fraud."  As a result of the

suspension action, all Medicare payments owed to the provider are being withheld pending

resolution of the ongoing investigation.

31.     CMS based its decision to suspend upon its belief that "the documentation you

submitted to support the claims did not support that the services provided were of an inherent

complexity that they could have only been performed safely and/or effectively by or under the

general supervision of a skilled nurse and/or therapist."   However, the list of sample claims

indicates that the basis for the payment suspension is that "Documentation does not support the

services billed met criteria for skilled nursing services." The garbled recitation apparently indicates insufficient documentation as the reason for the action.

### Suspension Will Force Plaintiff to Shutdown and File Bankruptcy

32      Impact of the Medicare payment suspension threatens to force Plaintiff's closure and filing of bankruptcy.

### CMS Abused its Discretion in Not Exercising Good Cause Exception to Suspension

33.      Had Defendant acted properly, it would not have imposed the suspension. CMS may find good cause exists not to suspend a provider's Medicare payments where it is determined that beneficiary access to items or services would be so jeopardized by a payment suspension as to cause a danger to life or health. 42 C.F.R. §405.371(b)(1)(ii). It is a clear abuse of discretion for CMS to not find that good cause exists here when the COVID-19 pandemic and the surge of confirmed coronavirus cases will soon overwhelm America's healthcare system, including home health agencies. Not only will Plaintiff be forced to shut down, the government's suspension action places an even greater burden on a healthcare community that soon may be on the brink of collapse.

### Sale of Home Health Agency

34.      Abet Life, Inc. was sold to its current ownership who acquired all of the stock of the corporation on May 31, 2018, and substantially all claims reviewed by Qlarant concerned dates of service that occurred prior to the acquisition of the provider.

### COVID-19 Pandemic and National Emergency

35.      President Donald Trump declared on March 13, 2020 a national emergency because of the COVID-19 pandemic.

36.     Governor Gregg Abbott also declared a state of disaster in Texas due to COVID-19 on March 13, 2020.

37.     When the national emergency was declared, the U.S. Government COVID-19 Response Plan was issued outlining the coordinated federal response activities for COVID-19. [7] The Government's response plan makes two things clear: (1) the pandemic "will last 18 months or longer" and (2) the COVID-19 outbreak will result in the implementation of drastic measures to contain its spread throughout the nation. Society as a whole may soon be faced with strict containment and social distancing measures for an extended period of time.

38.     Dr. Deborah Birx, White House Coronavirus Response Coordinator, has reported that U.S. deaths cause by COVID-19 may be catastrophic.[8]  She said that Dr. Anthony Fauci, National Institute of Allergies and Infectious Diseases, has predicted U.S. deaths could range from 1.6 to 2.2 million in a worst case scenario and projects 100,000 to 200,000 in a best case scenario. With the surge of confirmed coronavirus cases, America's hospitals are being overwhelmed.  And it is having a cascading effect on ancillary providers and practitioners, including home health agencies.

**Violation of Plaintiff's Due Process Rights**

39.     Plaintiff has a constitutional property interest in payments for services rendered and now indefinitely suspended during the investigation into the adequacy of its documentation. Defendant violates Due Process of law by imposing the adverse action during the COVID-19 pandemic and national emergency without extending to the provider notice and an opportunity for a hearing to contest the Medicare payment suspension.  Clearly, there is a high risk that Plaintiff

---

[7] https://int.nvt.com/data/documenthelper/6819-covid-l 9-responseplan/d367f758bec47cad361 f/optimized/full.pdf#page=l
[8] Interview with TODAY Show on Monday, March 30, 2020.

will be erroneously deprived of its property interest in Medicare payments it has earned for services rendered and indefinitely withheld by suspension, pursuant to 42 C.F.R. §405.371(a)(2), because the provider is not entitled under the available process to an administrative appeal to dispute and contest the suspension, and there is absolutely no established time frame for resolving the investigation of its documentation.

**Violation of Plaintiff's Patients' Due Process Rights**

40.     Patients at Abet Life have a constitutional Due Process right (consistent with principles of equal protection) to access safe and reliable services under the federal Medicare program.  HHS violates the patients' right to access such healthcare by imposing the suspension during the COVID-19 pandemic and national emergency.  Again, due to the COVID-19 outbreak securing such services are an uncertainty.  Clearly, good cause exists not to suspend the provider's Medicare payments where, as here, the beneficiary's access to items or services are jeopardized by the payment suspension and cause a danger to life or health.  *See* 42 C.F.R. §405.371(b)(1)(ii).  Plaintiff is not entitled to an administrative appeal to contest the suspension or HHS's abuse of discretion in not finding good cause to not impose the adverse action.

**Rebuttal Statement**

41.     A Rebuttal Statement was presented by Plaintiff to Qlarant on March 27, 2020 informing the UPIC that the Medicare suspension during the COVID-19 epidemic and national emergency was improper because, among other things, (1) it violates Plaintiff's constitutional right in payments for services rendered by failing to give notice and an opportunity for a hearing while payments are indefinitely suspended during the pendency of an investigation into the adequacy of its documentation, and (2) it violates the provider's patients' constitutional right to access essential healthcare services.

15

**Presentment of Claim**

42.     On March 27, 2020, Plaintiff gave formal Presentment of its Claim to Defendant informing HHS that imposing the Medicare suspension during the COVID-19 epidemic and national emergency was improper because, among other things, (1) it violates Plaintiff's constitutional right in payments for services rendered by failing to give notice and an opportunity for a hearing while payments are indefinitely suspended during the pendency of an investigation into the adequacy of its documentation, and (2) it violates the provider's patients' constitutional right to access essential healthcare services.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

43.     Defendant's failure to give notice and an opportunity for hearing to dispute and contest the March 12, 2020 suspension of Medicare payments violates constitutionally required procedures.  Plaintiff is deprived of an administrative process that conforms to the concept of Due Process of law and that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action.   No administrative or judicial review is otherwise available to contest Defendant's adverse action.  Such failure violates Plaintiff's constitutional right of Due Process of Law guaranteed by the U.S. CONST. amend. V, §1.  Under these facts, the administrative exhaustion requirement is excused.

**CLAIMS FOR RELIEF**

**Count 1 - Violation of Procedural Due Process of Law**

44.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

45.     The Fifth Amendment to the U.S. Constitution guarantees that no person shall be deprived of life, liberty, or property without Due Process of Law.

16

46.     Plaintiff has a constitutional property right in earned payments for services rendered and now indefinitely suspended during the pendency of the investigation into the adequacy of its documentation.

47.     Defendant's failure to give meaningful notice and an opportunity for a hearing to dispute and contest the March 12, 2020 suspension of Plaintiff's Medicare payments violates Due Process of law.

48.     Despite the lack of appeal rights to challenge the adverse action, Defendant initiated 100% suspension of the provider's Medicare payments for an indefinite period of time, which will irreparably harm the provider by forcing its closure and filing of bankruptcy.

49.     Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

50.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide a hearing and decision in conformance with constitutionally required procedures.

**Count 2 - Violation of Patients' Due Process Right of Access to Healthcare**

51.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

52.     Patients at Abet Life have a Due Process right (consistent with principles of equal protection) to access safe and reliable services under the federal Medicare program.

53.     Defendant violates these patients' right to access such healthcare by imposing the suspension during the COVID-19 pandemic and national emergency.

54.     Due to the COVID-19 outbreak securing such home health services is an uncertainty.

55.     Defendant jeopardizes the health and safety of Plaintiff's patient by suspending the provider's Medicare payments when the availability of alternative services are unsure and access to home health services is at risk during the COVID-19 pandemic and national emergency.

56.     Defendant's ill-advised suspension of Plaintiff's Medicare payments will ultimately deprive the provider's patients of their constitutional right to access essential healthcare services.

57.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide a hearing and decision in conformance with constitutionally required procedures.

**Count 3 – Defendant's Suspension of Payments is Arbitrary and Capricious**

58.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

59.     The Federal regulations 42 C.F.R. §405.371(b)(1)(ii) provide that Defendant may find good cause exists *not* to suspend a provider's Medicare payments over credible allegations of fraud where it is determined that beneficiary access to items or services would be so jeopardized by a payment suspension in whole or in part as to cause a danger to life or health.

60.     Due to the COVID-19 outbreak securing such home health services is an uncertainty.

61.     Defendant jeopardizes the health and safety of Plaintiff's patient by suspending the provider's Medicare payments when the availability of alternative services are unsure and access to home health services is at risk during the COVID-19 pandemic and national emergency.

62.     It is a clear abuse of discretion for Defendant to not find that good cause exists here where the COVID-19 pandemic and the surge of confirmed coronavirus cases will soon overwhelm America's healthcare system, including home health agencies like Abet Life.

18

63.     Defendant's ill-advised action not only will force Plaintiff to shut down its operation, it will place an even greater burden on a healthcare community that may soon be on the brink of collapse in the COVID-19 epidemic and national emergency.

64.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide a hearing and decision in conformance with constitutionally required procedures.

**Count 4 – Ultra Vires**

65.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

66.     Defendant acts *ultra vires* in failing to give notice and an opportunity for a hearing to dispute and contest the adverse action in conformance with Due Process of law yet imposing Medicare payment suspension during the COVID-19 pandemic and national emergency.

67.     Despite the failure to give notice and an opportunity for hearing to dispute and contest the adverse action, Defendant has suspended 100% of Plaintiff's payments, which will irreparably harm the provider by forcing it to close and file bankruptcy.

68.     Indeed, Defendant's failings effectively deprive Plaintiff of the fundamental requisites of Due Process, notice and an opportunity to be heard.

69.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide a hearing and decision in conformance with constitutionally required procedures.

## REQUEST FOR PRELIMINARY INJUNCTION

70.     Plaintiff will suffer irreparable injury if Defendant is not required to temporarily rescind the Medicare payment suspension during the pendency of the COVID-19 pandemic and national emergency or until it can provide a hearing and decision in conformance with constitutionally required procedures. Defendant's failure to give meaningful notice and an opportunity for a hearing to dispute and contest the March 12, 2020 suspension of Plaintiff's Medicare payments violates Due Process of law. Also, Plaintiff's patients have a Due Process right (consistent with principles of equal protection) to access safe and reliable services under the federal Medicare program, and Defendant violates these patients' right to access essential healthcare by imposing the suspension during the COVID-19 pandemic and national emergency. The government's egregious *ultra vires* conduct can only be remedied by a form of injunctive relief otherwise unavailable through the administrative process. Clearly, the combined threats of Plaintiff going out of business and its patients' loss of access to essential healthcare services are sufficient for irreparable harm. *Family Rehabilitation, Inc. v. Azar*, 886 F.3d at 506.

71.     There is no adequate remedy at law to contest and dispute the Medicare payments suspension imposed during the COVID-19 pandemic and national emergency.   *See Family Rehabilitation, Inc. v. Azar*, 886 F.3d at 504 (jurisdiction to hear procedural due process and *ultra vires* claims). Indeed, when the administrative process is not accessible, extraordinary relief is available. *See U.S. Ex Rel. Rahman v. Oncology Associates*, P.C., 198 F.3d 502 (4th Cir. 1999) (mandamus available when HHS failed to make overpayment determinations).

72.     There is a substantial likelihood that Plaintiff will prevail on the merits because Defendant's failure to give notice and an opportunity for hearing to contest the suspension imposed

20

during the COVID-19 pandemic and national emergency violates Due Process of law.  Plaintiff

seeks only to temporarily rescind the Medicare payment suspension until the COVID-19 national

emergency ends or until Defendant can provide a hearing and decision in conformance with

constitutionally required procedures.   Procedural due process protects against governmental

deprivation of a property interest, such as Plaintiff's interest in receiving Medicare payments

earned for services rendered. *See Adams*, No. 4:18-cv-01422 (S.D. Tex. July 11, 2018); *Family

Rehabilitation, Inc. v. Azar*, 2018 WL 2670730, *5-6 (N.D. Tex. June 4, 2018). *See also Furlong

v. Shalala*, 156 F.3d 384 (2d Cir. 1998) and *Oberlander v. Perales*, 740 F.2d 116 (2d Cir. 1984)

(property interest in "earned" Medicaid payments). This is derivative of the protected property

interest recognized in one's ownership of money. *See Board of Regents v. Roth*, 408 U.S. 564,

571-72 (1971). Accordingly, Plaintiff has a property interest in receiving the Medicare payments

it has earned for services rendered and that interest is violated by Defendant's imposition of the

Medicare payment suspension during the COVID-19 pandemic and national emergency, and

where it fails to give notice and an opportunity for hearing to dispute and contest the adverse

action.  Inasmuch as Defendant has failed to give notice and an opportunity for hearing to contest the

Medicare payments suspension, and Defendant violates Plaintiff's patients' right to access essential

healthcare by imposing the suspension during the COVID-19 pandemic, Plaintiff demonstrates a

substantial likelihood of success on the merits of its procedural due process claim.

     73.   The harm faced by Plaintiff outweighs the harm that would be sustained by

Defendant if injunctive relief is not granted. The provider will be forced to close its doors and file

bankruptcy because of Defendant's *ultra vires* acts and its patients will be forced to secure

alternative services during in the midst of the COVID-19 pandemic and national emergency when

such essential healthcare services is at risk of being unavailable.  Defendant, on the other hand,

will only be required to pay for the current claims of Medicare beneficiaries that it is otherwise obligated to reimburse under law.

74      Issuance of a preliminary injunction would not adversely affect the public interest. On the contrary, such relief ensures that Defendant will continue to provide essential healthcare to Medicare program beneficiaries during the COVID-19 pandemic and national emergency.

75.     Plaintiff is willing to post a bond in the amount the Court deems appropriate, but it should not be required to do so on the facts on this case because Defendant is otherwise obligated to pay for home health services for Medicare beneficiaries under its care.

76.     Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction.

## REQUEST FOR PERMANENT INJUNCTION

77.     Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendant.

## REQUEST FOR DECLARATORY RELIEF

78.     Plaintiff asks the Court for declaratory relief in accordance with Rule 57 and 28 U.S.C. 2201 that declares Defendant's March 12, 2020 Medicare payment suspension during the COVID-19 pandemic and national emergency (1) violates Plaintiff's constitutional right in payments for services rendered and now indefinitely suspended during the pendency of an investigation into the adequacy of its documentation, (2) and violates the provider's patients' constitutional right to access essential healthcare services, and (3) is arbitrary and capricious and a clear abuse of discretion for Defendant to not find good cause exists not to suspend the provider's Medicare payments when the beneficiary's access to items or services is jeopardized by the payment suspension and it causes a danger to life or health.

## ATTORNEY FEES & COSTS

79.     Plaintiff is entitled to an award of attorney fees and costs under the Equal Access

to Justice Act, 28 U.S.C. §2412, upon showing the applicant is a "prevailing party;" a showing

that the applicant is "eligible to receive an award; and a statement of "the amount sought, including

an itemized statement from any attorney . . . stating the actual time expended and the rate: charged.

The prevailing party is entitled to such attorney fees unless the government's position was

"substantially justified" or special circumstances make an award unjust.

## PRAYER

80.     For these reasons, Plaintiff asks for judgment against Defendant for the following:

a.      Mandatory injunctive relief that requires Defendant to temporarily rescind
        the Medicare payment suspension during the pendency of the COVID-19
        pandemic and national emergency or until HHS can provide a hearing and
        decision in conformance with constitutionally required procedures.

b.      Declare that Defendant's March 12, 2020 Medicare payment suspension
        violates Plaintiff's constitutional right to notice and an opportunity for
        hearing to contest the adverse action.

c.      Declare that Defendant's March 12, 2020 Medicare payment suspension
        violates Plaintiff's patients' constitutional right to access essential
        healthcare services.

d.      Declare that Defendant's March 12, 2020 Medicare payment suspension is
        arbitrary and capricious and a clear abuse of discretion for Defendant to not
        find good cause exists not to suspend the provider's Medicare payments

when the beneficiary's access to items or services is jeopardized by the payment suspension and it causes a danger to life or health.

e.    Reasonable attorney fees.

f.    Court costs.

g.    All other relief the Court deems appropriate.

Respectfully submitted,

KENNEDY
Attorneys and Counselors at Law

/s/ Mark Kennedy
MARK S. KENNEDY
State Bar of Texas No. 24000122
Southern District Bar No. 435115
LURESE TERRELL
State Bar of Texas No. 24008139
Southern District Bar No. 33360
12222 Merit Drive, Suite 17500
Dallas, TX 75251
Telephone: (214) 445-0740
Fax: (972) 661-9320
markskennedylaw@msn.com

**ATTORNEYS FOR PLAINTIFF**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOURTHER DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **ABET LIFE, INC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. 4:20-cv-1169** |
| **ALEX M. AZAR II, Secretary,** | § | |
| **UNITED STATES** | § | |
| **DEPARTMENT OF HEALTH** | § | |
| **AND HUMAN SERVICES,** | § | |
| **Defendant.** | § | |

## VERIFICATION

"I, Binny Oonnoony, declare from my personal knowledge that the following facts are true:

1. I, Binny Oonnoonny, am the President of Abet Life, Inc.

2. I have read the Verified Complaint for Injunctive and Declaratory Relief and Attorney's Fees.

3. The facts stated in that complaint are within my personal knowledge and are true and correct.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on March 31, 2020."

Binny Oonnoonny

25